IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRYAN CHRISTOPHER O'ROURKE, | ) |
| | ) |
|     Petitioner, | ) |
| | ) |
| v. | )    Case No. 23-CV-0290-JDR-CDL |
| | ) |
| CASEY HAMILTON, Warden, | ) |
| | ) |
|     Respondent. | ) |

**RESPONDENT'S OBJECTION TO REQUEST FOR STAY (DOC. 37)**

The Attorney General of the State of Oklahoma, Gentner F. Drummond, appearing on behalf of the above-named Respondent, hereby objects to Petitioner's "Motion For a Protective Stay and Abeyance" (Doc. 37) (capitalization omitted), and files this Objection and Brief in Support. Furthermore, Respondent requests that this Motion be denied and shows this Court as follows:

**A. Factual and Procedural Background:**

Petitioner filed his 28 U.S.C. § 2254 habeas petition on July 14, 2023 (Doc. 1). The petition listed more than sixty claims, including numerous subclaims (Doc. 1). On September 25, 2023, while Respondent was preparing the Response to the petition, Petitioner filed what he termed his "Amended Motion to Certify Questions to the Tenth Circuit And/or U.S. Supreme Court With Request for Partial Summary Judgment." (Doc. 15). In this motion, Petitioner requested "partial summary judgment by denying his claims challenging the Major Crimes Act ['MCA'], . . . as

impermissibly reliant on race and that the Indian blood prong of the so-called *Rogers*[1] test . . . should be overruled or otherwise excepted as to the Five Tribes' Intermarriage and Freedmen descendants." (Doc. 15 at 1-2). Further, Petitioner requested in the motion that this Court "certify these issues for interlocutory appeal because [they raise] disputed questions of law that only the U.S. Supreme Court can determine," and because "an immediate appeal from the order . . . may materially advance termination of the litigation." (Doc. 15 at 2). Petitioner also requested that this Court grant Respondent partial summary judgment by denying his *Rogers*/MCA claims, so he could get to the United States Supreme Court faster and have it potentially overrule *Rogers*. (Doc. 15 at 2).

Respondent filed a Response in Opposition to Amended Motion to Certify Questions to the Tenth Circuit and/or U.S. Supreme Court With Request For Partial Summary Judgment on October 16, 2023, arguing that Petitioner was not entitled to an interlocutory appeal, or partial summary judgment in favor of the State, on his *Rogers*/MCA claims (Doc. 18 at 5-12). Specifically, Respondent argued Petitioner was not entitled to an interlocutory appeal because there was "no substantial ground for difference of opinion" as to the controlling questions of law, as *Rogers* has been controlling precedent for more than 170 years, and Petitioner cannot meet the *Rogers* standard because he is not and can never be an Indian (Doc. 18 at 8). For similar reasons, Respondent argued that Petitioner was not entitled to have the Court grant summary judgment in favor of Respondent just to pursue his attempt to overrule *Rogers* because overruling *Rogers* would

---

[1] *United States v. Rogers*, 45 U.S. 567, 572-73 (1846) (holding the fact that the appellant was recognized as Indian by a tribe was insufficient to deprive the lower court of jurisdiction, and some evidence of Indian blood was necessary because "whatever obligations the prisoner may have taken upon himself by becoming a Cherokee, . . . his responsibility to the laws of the United States remained unchanged and undiminished. He was still a white man, of the white race, and therefore not within the exception in the act of Congress.").

not actually benefit him, as he is not an Indian (Doc. 18 at 9-12). Additionally, in a footnote Respondent explained that Petitioner's stand-alone *Rogers* claim was found to be procedurally barred by both the state district court and the Oklahoma Court of Criminal Appeals ("the OCCA") because it had not been raised on direct appeal (Doc. 18 at 10).

On October 18, 2023, Petitioner filed his Supplement to the Amended Motion to Certify Questions to the Tenth Circuit and/or U.S. Supreme Court, which notified this Court of a decision by the District Court of the Muskogee Creek Nation concluding that Freedmen could not be excluded from tribal enrollment based solely on their racial descendancy (Doc. 19 at 2). Petitioner argued that based on this decision, the Court should grant his request to certify because these were "important issues for both this Court's, and the Tenth Circuit's criminal and appellate jurisdiction" (Doc. 19 at 3). Petitioner then filed his reply to Respondent's Response in Opposition, arguing that the Response was "factually and legally wrong," and that the State was "preempted" from prosecuting him (Doc. 20 at 1, 8).

On November 2, 2023, Respondent filed the roughly 130-page Response to Petition for Writ of Habeas Corpus, along with the state court record (Docs. 23, 24). On November 8, 2023, Petitioner filed a Supplement to Reply to Respondent's Motion in Opposition to Certify, arguing that "the SCOTUS has jurisdiction under 28 U.S.C § 1254(1) to review interlocutory decisions of a federal court of appeals," and the decision to do so "is not unprecedented" (Doc. 25 at 1). Further, the Supplement argued that he had shown "even under the nearly impossible burdens of the AEDPA, that the state district court and OCCA made unreasonable determinations of fact and unreasonably applied an outright holding of the SCOTUS" (Doc. 25 at 5). He also argued that the application of the Supreme Court's decision in *Oklahoma v. Castro-Huerta*, 142 S. Ct. 2486 (2022) to his case was an "unreasonable application" of clearly established federal law, and that it was

3

"objectively unreasonable" (Doc. 25 at 7). Further, he argued that it was an unreasonable determination of the facts because "the factual determination here is an objectively unreasonable one of finality, based on an unreasonable determination of the facts in light of the evidence of the State court proceedings" (Doc. 25 at 8).

On November 27, 2023, Petitioner filed a Motion for Extension of Time to Reply to Motion Response, asking the Court for a 120-day extension of time to reply to Respondent's Response to his habeas petition (Doc. 26 at 1-6). In this motion, Petitioner explained he had been transferred to Great Plains Correctional Center in Hinton, Oklahoma on November 6, 2023 (Doc. 26 at 1). He claimed that he had recently received his discovery file from his former post-conviction attorney, but the Warden "refused to allow [him] to bring all of his legal documents with him to [Great Plains Correctional Center]," citing Oklahoma Department of Corrections policy (Doc. 26 at 2). He claimed this was prejudicial because it included transcripts of proceedings in state court, state court filings, and numerous documents supporting his claims, and that his family would be forced to mail these documents in "piecemeal fashion" (Doc. 26 at 2-3). Petitioner also asked this Court to order Respondent to make accommodations for him to receive his legal documents for the appellate process (Doc. 26 at 3-4). That same day, Petitioner sent a letter to the Clerk of Court asking the clerk to "re-send [him] copies of all documents and orders" filed since October 31, 2023. The Clerk of Court responded later that day, informing Petitioner that "[a]s you were previously advised, any requests for copies will require prepayment of copy fees at the statutory rate of $.50 per page" (Doc. 28 at 1). The Court Clerk attached a docket sheet for the case to the letter, and informed Petitioner that he would need to specify which documents he wanted, and that the clerk's office would then inform him of the fee and require pre-payment (Doc. 28 at 1).

Three days later, on November 30, 2023, this Court issued an order granting his request for

4

a 120-day extension, but denying his request to order Respondent to make accommodations for him to receive his legal documents, explaining, "[T]he constitution charges federal judges with deciding cases and controversies, not running state prisons" (Doc. 29 at 1-2). The Court also denied Petitioner's requests for summary judgment and an interlocutory appeal (Doc. 29 at 4-9). In denying the request, the Court explained that Petitioner was not entitled to summary judgment before he had filed a reply to Respondent's Response, and thus his request was made "before any of [his] claims . . . [were] ripe for adjudication" (Doc. 29 at 7). Similarly, the Court denied his request for an interlocutory appeal also because "none of [his] habeas claims will be ripe for adjudication until [he] files the optional reply brief that he has indicated he intends to file" (Doc. 29 at 8-9).[2]

Petitioner filed a 115-page Motion for Expedited Discovery and Evidentiary Hearing on his preemption claim on December 26, 2023 (Doc. 30 at 1). In the motion he asked that the Court, for good cause shown, order that Respondent provide various documents, while also responding to various attached interrogatories and requests for admission, and also that the Court give him an evidentiary hearing (Doc. 30 at 1-61). Further, Petitioner also requested that the Court appoint him counsel (Doc. 30 at 61). Respondent filed his Objection to these requests on January 9, 2024 (Doc. 33). In the Objection, Respondent argued that the discovery request should be denied because Petitioner failed to show good cause, as his discovery request amounted to nothing more than a fishing expedition, he was not diligent in developing his preemption claim, and because the claim clearly fails for the reasons discussed in the Response to his habeas petition (Doc. 23 at 22-23, 28-30; Doc. 23-22 at 2; Doc. 33 at 6-10). Respondent also argued that an evidentiary hearing was

---

[2] Petitioner still has yet to file this reply, but has but has been able to file multiple other motions (Doc. 30, 34, 36, 37).

5

unwarranted because, as explained in the Response, Petitioner failed to meet his burden under 28 U.S.C. § 2254(d) (Doc. 33 at 10, 13). Specifically, the Response on the merits explained that the State was not preempted from prosecuting Petitioner because he is not an Indian, and therefore not entitled to relief under *McGirt*,[3] and also because C.M.'s Indian status is therefore irrelevant under *Castro-Huerta* (Doc. 33 at 13-15). Finally, Respondent argued Petitioner was not entitled to appointment of counsel because he was not entitled to an evidentiary hearing or discovery, as his preemption claim was meritless (Doc. 33 at 17).[4]

The same day Respondent filed his Objection to Petitioner's Motion, Petitioner filed a twenty-page Supplement to His Preemption Claim Motion For Expedited Discovery and Evidentiary Hearing (Doc. 34). In the supplement, Petitioner reurged that application of *Castro-Huerta* to his case violated "ex post facto principles," and also argued that the State utilized the Tulsa County juvenile court system to "suppress material exculpatory and impeaching evidence" (Doc. 34 at 2-18) (capitalization omitted). Then, on February 2, 2024, Petitioner filed his sixty-page reply to Respondent's Objection (Doc. 36). In this Reply, Petitioner accused Respondent of being "deceitful" in arguing that Federal District Courts in Oklahoma have barred habeas relief pursuant to *Castro-Huerta* in cases that were final before that case was decided (Doc. 36 at 10). Further, he claimed that a judge—whom he did not name—told his appellate counsel that it was not "his job to show judges that police and prosecutors lie and cheat – we already know that. Your job is to make judges *care* about it" (Doc. 36 at 11) (emphasis in original). He further reurged his

---

[3] *McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020).

[4] This Court has not yet ruled on Petitioner's Motion for Discovery, and Evidentiary Hearing, or Appointment of Counsel. Nevertheless, Respondent reurges his Objection, and asserts that the Motion should be denied for the reasons discussed in the Objection and the Response to his habeas petition (Doc. 23, 33).

discovery request, asserting that the State "violated its duty to disclose material exculpatory and impeaching evidence pretrial, and Respondent's duty to disclose during the direct appeal stage was ongoing" (Doc. 36 at 13) (capitalization omitted). Petitioner also asserted that State court procedures were "inadequate, ineffective and evidence of Respondent's bad faith exceeds the cause and prejudice standard" (Doc. 36 at 20-28). He also asserted that his appellate counsel was ineffective for "failing to investigate, provide [sic] sufficient prima facie evidence, and to request an evidentiary hearing" (Doc. 36 at 33) (capitalization omitted). Further, in reply to Respondent's argument that he could not ever be a member of the Choctaw Nation, Petitioner argued in a footnote that "[e]ven constitutional law is subject to amendment," asserting that "there was a time in our Nation's history when people of Irish (O'Rourke) and Italian (Tr[a]passo) descent were not considered 'white' nor protected by law from invidious racial discrimination" (Doc. 36 at 46 n.29). Further, Petitioner asserted that he had recently "discussed with retired Tenth Circuit Judge Robert Henry his claims that *Castro-Huerta* could not be retroactively applied to his case because doing so violates due process," asserting that "Judge Henry agreed, and while now retired, he was certainly a preeminent and reasonable jurist during his career" (Doc. 36 at 46). Petitioner also asserted that he discussed his case with several unnamed Indian law attorneys and former law clerks to Supreme Court Justice Clarence Thomas, arguing they all agreed with his contention that the *Rogers* test should be overruled (Doc. 36 at 48).

Petitioner then filed the instant Motion For A Protective Stay and Abeyance on March 28, 2024 (Doc. 37). In the Motion he asks this Court to grant a stay of this case to allow him to file a Petition for Writ of Certiorari to the United States Supreme Court challenging the OCCA's application of *Castro-Huerta* to his preemption claims on post-conviction, as well as a separate, original petition for habeas corpus in the Supreme Court challenging the constitutionality of the

7

Major Crimes Act and the *Roger*'s test (Doc. 37 at 1-2). Petitioner further claims that he "shows good cause, that his claims are potentially meritorious, and that petitioning the U.S. Supreme Court does not unnecessarily delay these proceedings" (Doc. 37 at 2). Respondent files the instant Objection to this request and asks that the Court deny the Motion for Stay for the reasons explained herein.

**B. Argument and Authority:**

Respondent objects and asks this Court to deny Petitioner's motion to stay because he has failed to show good cause, or that his claims are potentially meritorious, and because he has engaged in dilatory, abusive litigation tactics.

**(1) Petitioner fails to show good cause for his delay, or that his claims are potentially meritorious.**

Petitioner relies on the Supreme Court's decision in *Rhines* regarding stays of habeas proceedings to allow a habeas petitioner to exhaust unexhausted claims. A federal court may, "if the equities favor such an approach, . . . stay the federal habeas petition and hold it in abeyance while the petitioner **returns to state court to exhaust** the previously unexhausted claims." *Wood v. McCollum*, 833 F.3d 1272, 1273 (10th Cir. 2016) (citing *Rhines v. Weber*, 544 U.S. 269, 279 (2005); *Rose*, 455 U.S. 509, 510 (1982)). But because granting a stay "effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is **only** appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Rhines*, 544 U.S. at 277 (emphasis added). Indeed, one of the main purposes of the Antiterrorism and Effective Death Penalty Act ("AEDPA") is to "reduce delays in the execution of state and federal criminal sentences[.]" *Rhines*, 544 U.S. at 276 (quoting *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) ("Congress enacted AEDPA to **reduce delays** in the execution of state and federal criminal sentences[.]")) (emphasis added). Staying a federal

8

habeas petition "frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of federal proceedings," and also "undermines AEDPA's goal of streamlining federal habeas proceedings[.]" *Id.* at 277. Accordingly, a district court abuses its discretion if it grants a stay when the claims at issue "are plainly meritless." *Id.*; *see also Reeves v. Braggs*, No. CV-19-602-F, 2020 WL 8872293, at *5 (W.D. Okla. Jan. 28, 2020) (unpublished) (holding that the stay and abeyance procedure was inappropriate where the petitioner's ineffective assistance of counsel claim was plainly meritless). Additionally, where a petitioner "engages in abusive litigation tactics or intentional delay, the district court should not grant him a stay at all." *Rhines*, 544 U.S. 278.

Moreover, the Supreme Court has repeatedly concluded that district courts have authority to issue stays "where such a stay would be a **proper** exercise of discretion." *Ryan v. Gonzales*, 568 U.S. 57, 73 (2013) (emphasis added) (quoting *Rhines*, 544 U.S. at 276). Indeed, a district court has the "inherent power to control the progress of the [case] so as to maintain the orderly process of justice." *Ryan*, 568 U.S. at 74 (quoting *Enelow v. N.Y. Life Ins. Co.*, 293 U.S. 379, 382 (1935)). The Tenth Circuit has referred to this power to manage dockets as "deeply ingrained in our jurisprudence[.]" *Hornsby v. Evans*, 328 F. App'x 587, 588 (10th Cir. 2009) (unpublished). Further, the Supreme Court and the Tenth Circuit have concluded that, in the context of competency stays, a district court abuses its discretion in granting a stay where the petitioner's claims are "record based or resolvable as a matter of law[.]" *Cf. Ryder ex rel. Ryder v. Warrior*, 810 F.3d 724, 737-38 (10th Cir. 2016) (citing *Ryan*, 568 U.S. at 73-74).

To begin, Petitioner's argument that he has shown good cause for a stay is incorrect. He claims he shows good cause for three reasons: (1) he has a "statutory right to seek both certiorari and original habeas in the SCOTUS;" (2) there is "no unnecessary delay;" and (3) because "the

9

State and Federal habeas processes are inadequate and ineffective to address his challenge to the constitutionality of the MCA." (Doc. 37 at 2). But even assuming *arguendo* that he has such a statutory right, *see Felker v. Turpin*, 518 U.S. 651, 660-61 (1996) (holding that AEDPA did not repeal the Supreme Court's authority to "entertain original habeas petitions"), he has not explained why he needs a stay in order to pursue that right, or how being allowed to file such documents shows good cause for a stay. (Doc. 37 at 2-3). Indeed, he cites *Rhines*, but that case deals with stays to allow a petitioner to return to State court and exhaust unexhausted claims (Doc. 37 at 1). *Rhines*, 544 U.S. at 276-78. Further, such an argument ignores that the purpose of AEDPA is to "reduce delays in the execution of state and federal criminal sentences," and that any stay "frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of federal proceedings," while also "undermin[ing] AEDPA's goal of streamlining federal habeas proceedings[.]" *Rhines*, 544 U.S. at 276-77 (quoting *Woodford*, 538 U.S. at 206 ("Congress enacted AEDPA to **reduce delays** in the execution of state and federal criminal sentences[.]")) (emphasis added). Allowing Petitioner a stay to simply jump the line to the Supreme Court in order to litigate a claim that he has discussed ad nauseum in his filings with this Court[5] would wholly eviscerate the purpose of AEDPA, particularly where he has made no showing why a stay is necessary to do so.[6] *Id.* Thus, his argument that he has shown good cause for a stay simply because he supposedly has the right to file these claims in the Supreme Court is

---

[5] Indeed, Petitioner has raised his claim that the OCCA erred in applying *Castro-Huerta* in a majority of his filings with this Court. (Doc. 1 at 19-22; Doc. 20 at 8-10; Doc. 25 at 6-9; Doc. 30 at 43-51; Doc. 34 at 1-14; Doc. 36 at 43-45, 49-51).

[6] Respondent also notes that these claims are ripe for review as, for the reasons discussed *infra*, the time for filing a reply to the Response has expired (Doc. 29). Indeed, the Court granted Petitioner an extension of 120 days to file the reply on November 30, 2023, making that reply due on or before March 29, 2024 (Doc. 29).

10

meritless. *Id.*

Additionally, Petitioner's claim that a stay would not result in "unnecessary delay" could not be further from the truth. Indeed, Petitioner is requesting a stay to litigate claims at the Supreme Court which the Respondent has repeatedly shown are meritless (Doc.'s 23, 33). As Respondent argued in the Response, his argument that the OCCA erred in applying *Castro-Huerta* to his case is an attempt to use non-retroactivity principles as a sword, ignoring that they are generally meant to be a shield for the State, and also ignores that judicial decisions are not subject to the same ex post facto concerns as those of the legislature (Doc. 28-30). *See Purdom v. State*, 523 P.3d 54, 59 (Okla. Crim. App. 2022) (rejecting the appellant's claim that due process requires *Castro-Huerta* apply only prospectively, writing, "*Castro-Huerta* affects only the manner of determining the defendant's culpability and imposed only procedural changes establishing that both the State and Federal Government may prosecute cases involving non-Indian defendants who perpetrate crimes against Indian victims on the reservation"). *See also Rogers v. Tennessee*, 532 U.S. 451, 460 (2001) ("The Ex Post Facto Clause, by its own terms, does not apply to courts."); *Evans v. Ray*, 390 F.3d 1247, 1251 (10th Cir. 2004) ("'The Ex Post Facto Clause is a limitation upon the powers of the Legislature, and does not of its own force apply to the Judicial Branch of Government.'") (quoting *Marks v. United States*, 430 U.S. 188, 191 (1977)). Accordingly, the general rule is actually that judicial decisions apply retrospectively, which is grounded in centuries-old Blackstonian principles. *See James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 549 (1991) (Scalia, J., concurring) ("the judicial power . . . is the power to say what the law is, not the power to change it. . . . *judges make [law],* which is to say *as though* they were 'finding' it—discerning what the law *is,* rather than decreeing what it is today *changed to,* or what it will *tomorrow* be" (quotation marks omitted) (emphases in original)); *Kuhn v. Fairmont Coal Co.*, 215 U.S. 349, 372 (1910)

11

(Holmes, J., dissenting) (courts have authority "only to declare the law," "not . . . to make it," and "[j]udicial decisions have had retrospective operation for *near a thousand years*") (emphasis added)).

The test for determining retroactive application of a judicial decision is "essentially one of foreseeability," including "expansion of a statute narrow and precise on its face beyond those terms; the overruling of precedent," or when "an in-depth inquiry by a dedicated and educated student of [the relevant] law would have revealed nothing to foreshadow the controlling court opinion." *Johnson v. Klindt*, 158 F.3d 1060, 1063 (10th Cir. 1998) (citing *McDonald v. Champion*, 962 F.2d 1455, 1458 (10th Cir. 1992) & *Devine v. N.M. Dept. of Corr.*, 866 F.2d 339, 345 (10th Cir. 1989)). Nothing in the *Castro-Huerta* decision falls within one of these categories, as the Court repeatedly explained that it was interpreting the federal laws at issue according to their terms, finding that those terms did not preempt State jurisdiction. *Castro-Huerta*, 142 S. Ct. at 2495, 2499-2504. Furthermore, the federal district courts have repeatedly applied *Castro-Huerta*'s holding to habeas petitioners whose appeals were affirmed before that decision was handed down. *See Robinson v. Harvanek*, No. 20-CV-86-GKF-CDL, 2023 WL 256340, at *4 (N.D. Okla. Mar. 17, 2023) (unpublished), appeal docketed, (10th Cir. Apr. 3, 2023) (applying *Castro-Huerta* in rejecting habeas petitioner's claim that the State was without jurisdiction to prosecute him because his crimes occurred in Indian country and his victims were Indian); *Allen v. Tuggle*, No. CIV 22-125-RAW-KEW, 2023 WL 1069730, at *1-2 (E.D. Okla. Jan. 30, 2023) (unpublished) (applying *Castro-Huerta* in a habeas case where the OCCA affirmed the denial of post-conviction relief in January 2022, roughly six months before *Castro-Huerta* was decided). As such, to allow a stay to further litigate such a meritless claim would indeed cause unnecessary delay, and completely eviscerate AEDPA's purpose of streamlining federal habeas proceedings. *Rhines*, 544 at 276-77.

The same is true of Petitioner's proposed challenge to the Major Crimes Act ("MCA") and the *Rogers* test. As Respondent explained in the Response to Petitioner's Amended Motion to Certify, even if *Rogers* was overruled it would not aid his defense because he is not now, and can never be a member of the Choctaw Nation (Doc. 18 at 8). Petitioner even conceded in litigation of his state habeas that he is "ineligible for tribal enrollment because his great-great-grandmother is recorded on the Choctaw Nation's 'Intermarried White' Dawes Roll" (Doc. 18-8 at 2). As such, even if he were successful in getting the *Rogers* decision overturned, it would not mean the State was preempted because he would still not be an Indian. Petitioner effectively argues that if allowed a stay to litigate this claim, the Supreme Court would overrule the *Rogers* test that has been the precedent for roughly 150 years, and even though he would still not be an Indian, the State would be preempted from prosecuting him because he donated to tribal campaigns and considers himself an Indian. This is utterly meritless, and indulging his request to stay the proceedings so he can litigate such a meritless claim would also cause unnecessary delay, further eviscerating the purposes of AEDPA. *Rhines*, 544 U.S. at 276-77; *Cf. Ryder*, 810 F.3d at 737-38 (noting a district court abuses its discretion in granting a competency stay where the petitioner's claims are resolvable on the record and fail as a matter of law) (citing *Ryan*, 568 U.S. at 73-74). Indeed, the Supreme Court concluded in *Rhines* that a district court abuses its discretion in granting a stay regarding claims that are wholly meritless. *Rhines*, 544 U.S. at 277.

Moreover, as Respondent discussed in the Response and its Objection to Petitioner's Motion for discovery, an evidentiary hearing, and appointment of counsel, Petitioner's stand-alone preemption claim is also meritless because it is procedurally barred by his failure to raise the claim on direct review (Doc. 23-21 at 4; Doc. 23 at 123-26; Doc. 33 at 3, 14-17). OKLA. STAT. tit. 22, § 1086 (2011); *Reese v. Yates*, 778 F. App'x 552, 557 (10th Cir. 2019) (unpublished) (citing *Hale*

13

*v. Gibson*, 227 F.3d 1298, 1330 n.15 (10th Cir. 2000)). Indeed, because Petitioner failed to raise a stand-alone preemption claim before the OCCA on direct appeal, that claim was procedurally barred and not reviewable. OKLA. STAT. tit. 22, § 1086 (2011); *Reese*, 778 F. App'x at 557. Thus, this Court should also refuse him a stay on his MCA/*Rogers* claims because even if he could file an original habeas petition regarding such claims at the Supreme Court, they are still procedurally barred. *Rhines*, 544 U.S. at 277 (a district court abuses its discretion in granting a stay regarding meritless claims).

Additionally, Petitioner's argument that a stay should be granted because State and Federal habeas procedures are "inadequate and ineffective to address his challenge to the constitutionality of the MCA" similarly fails to show good cause, as it is just a tacit concession that his preemption claim fails as a matter of law (Doc. 37 at 3). *Cf. Ryder*, 810 F.3d at 737-38 (citing *Ryan*, 568 U.S. at 73-74). Indeed, Petitioner even concedes that this Court is bound by the *Rogers* decision because of *stare decisis* (Doc. 37 at 3). Such a concession refutes his argument that there is good cause for a stay, or that his claim is potentially meritorious. *Rhines*, 544 U.S. at 276-77. Moreover, his request for a stay to litigate his preemption claim is similar to his request that the Court grant Respondent summary judgment, or certify his questions on this claim to the Supreme Court, which the Court has already denied (Doc. 15 at 16-21; Doc. 29 at 6-9). There, Petitioner also argued that the Court was bound by "vertical *stare decisis*," and there was "no just reason to delay review of these issues until it rules on Petitioner's other claims" (Doc. 15 at 16-17). But because this argument is merely a concession that his preemption claim is meritless, the Court should also deny a stay for this reason. As Respondent has already discussed, to allow Petitioner a stay to further litigate wholly meritless claims would eviscerate the purposes of AEDPA. *Rhines*, 544 U.S. at 276-77.

Accordingly, this Court should deny Petitioner's request for a stay. He has failed to show good cause for a stay where he would still be able to file at the Supreme Court without a stay, and where the claims he seeks to litigate at the Supreme Court are plainly meritless. To indulge this baseless request would wholly eviscerate AEDPA's purposes, as any delay would be wholly unnecessary, particularly where he concedes that his claims are refuted by Supreme Court case law. *Rhines*, 544 U.S. at 276-77; *Cf. Ryder*, 810 F.3d at 737-38 (citing *Ryan*, 568 U.S. at 73-74). Regardless, even if this Court disagrees, Petitioner's request should still be denied because he has engaged in abusive, dilatory litigation tactics. *Rhines*, 544 U.S. at 278 (noting a petitioner is not entitled to a stay where he "engages in abusive litigation tactics or intentional delay").

### (2) A stay is inappropriate because Petitioner has engaged in abusive, dilatory litigation tactics.

Of further note, Petitioner should also be denied a stay because he has engaged in dilatory litigation tactics. *Rhines*, 544 U.S. at 278 (noting that a petitioner must also show that he has not engaged in dilatory litigation tactics); *Thompson v. Quarterman*, 292 F. App'x 277, 295 (5th Cir. 2008) (unpublished) ("Thompson does not explain why he did not file his motion for a stay until **several months** after filing his federal habeas petition. Thus, the district court did not abuse its discretion in denying a stay." (emphasis added)); *Gellock v. Martel*, No. 217-CV-1911-MCEKJNP, 2018 WL 2096879, at *4 (E.D. Cal. May 7, 2018) (unpublished) (finding petitioner dilatory where "his delay is rapidly approaching **two years**" (emphasis added)). Indeed, Petitioner has not explained why he waited until now to file at the Supreme Court. *See Cf. Gomez v. U.S. District Court for Northern District of C.A.*, 503 U.S. 653, 654 (1992) (denying request for stay of execution to file successive habeas to raise method of execution challenge, concluding, "This claim could have been brought more than a decade ago. There is no good reason for this abusive delay[.]"). This delay is particularly puzzling where Petitioner has clearly wanted to skip the line

15

to the Supreme Court at least since filing his motion for summary judgment in September 2023 (Doc. 15). *Thompson*, 292 F. App'x at 295. Further, nothing prevented him from filing what he now requests to file back then, instead of filing that frivolous motion (Doc. 15). Respondent respectfully asserts that this indicates dilatory and abusive litigation tactics, and that conclusion is supported by the litany of motions and supplements to those motions regarding these claims that even he admits are foreclosed by Supreme Court case law (Doc. 15; Doc. 20 at 8-10; Doc. 25 at 6-9; Doc. 30 at 43-51; Doc. 34 at 1-14; Doc. 36 at 43-45, 49-51). Indeed, not including his petition, Petitioner has written nearly 100 pages on these claims, including extensive discussion in his 115-page motion for discovery, an evidentiary hearing, and appointment of counsel. *Cf. Hornsby*, 328 F. App'x at 587-88 (noting habeas petitioner's filing a "litany of non-meritorious or outrightly frivolous motions" in the district court and referring to it as an "abuse of the federal judicial process"). Such a conclusion is also supported by the fact that he also requests three exemptions to this stay, all for the filing of motions or briefs beneficial to him (Doc. 37 at 16-17). *Thompson*, 292 F. App'x at 295. Specifically, he claims that the Court should exempt any amicus brief filed by the Choctaw Nation, a stipulation by Respondent that relief is warranted, and a decision granting his motion for discovery, an evidentiary hearing, and appointment of counsel (Doc. 37 at 16-17). Accordingly, his request that he be able to have his cake and eat it too, combined with his failure to previously file in the Supreme Court, indicates that he is not entitled to a stay because of his abusive and dilatory litigation tactics. *Rhines*, 544 at 278; *Thompson*, 292 F. App'x at 295.

Additionally, such a conclusion is also supported when looking at the fact that on November 27, 2023, Petitioner requested a 120-day extension of time to file his reply to the Response (Doc. 26 at 1-6). In this motion, Petitioner claimed he was unable to file his reply due to a transfer to another facility, specifically because he did not have all of his documents necessary

16

to do so (Doc. 2-3). Despite this Court granting that extension on November 30, 2023,[7] he has still not filed that reply (Doc. 29). Further, despite his claim in the extension request that he was unable to file a reply to the Response without these documents, Petitioner has still been able to file five other motions or supplements to motions, including this one (Doc 30; Doc. 31; Doc. 34; Doc. 36; Doc. 37). This, combined with his failure to previously file these claims at the Supreme Court, despite ample opportunity to do so, provides further evidence of Petitioner's abusive and dilatory litigation tactics, such that he is not entitled to a stay. *Rhines*, 544 U.S. at 278; *Thompson*, 292 F. App'x at 295. Therefore, Respondent objects to a stay because of Petitioner's dilatory litigation tactics, and his request for a stay should be denied for this reason as well.

## CONCLUSION

Based on the above and foregoing law and reasoning, this Court should deny Petitioner's request for a stay.

Respectfully submitted,

**GENTNER F. DRUMMOND**
**ATTORNEY GENERAL OF OKLAHOMA**

**s/ Michel A. Trapasso**
**Michel A. Trapasso, O.B.A. #35298**
**ASSISTANT ATTORNEY GENERAL**
313 N.E. 21st Street
Oklahoma City, OK 73105
Phone: (405) 522-3002
Fax: (405) 522-4534
**Service email: fhc.docket@oag.ok.gov**

**ATTORNEYS FOR RESPONDENT**

---

[7] Notably, 120 days from November 30, 2023, made Petitioner's Reply due on or before March 29, 2024.

## **CERTIFICATE OF SERVICE**

**X**        I hereby certify that on April 15th, 2024, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.

**X**        I hereby certify that on April 15th, 2024, I served the attached document by mail on the following:


Bryan Christopher O'Rourke #854732
Great Plains Correctional Center, Unit E-E-09
P.O. Box 700
Hinton, OK 73047