# United States District Court
## for the Northern District of Oklahoma

Case No. 23-cv-290-JDR-CDL

BRYAN CHRISTOPHER O'ROURKE,

*Petitioner*,

*versus*

CASEY HAMILTON, *Warden*,

*Respondent*.

## OPINION AND ORDER

Petitioner Bryan Christopher O'Rourke, a self-represented Oklahoma prisoner, petitions for a writ of habeas corpus under 28 U.S.C. § 2254, asserting he is in state custody in violation of federal law because of the criminal judgment entered against him in Tulsa County District Court Case No. CF-2017-4236. On careful consideration of the Petition [Dkts. 1, 12];[1] the Response [Dkt. 23], the record of state court proceedings (attachments to Dkt. 23, Dkt. 24), and applicable law, the Court denies the Petition.[2]

I.

In 2019, a Tulsa County jury found Mr. O'Rourke guilty of eight counts of lewd molestation, in violation of Okla. Stat. tit. 21, § 1123, and

[1] Mr. O'Rourke obtained leave to supplement the Petition with a timeline relevant to one or more of the claims asserted in the Petition. *See* Dkts. 11, 12. The supplement does not raise any additional substantive claims. Dkt. 12.

[2] This Court previously considered and denied Mr. O'Rourke's multiple requests to expand the record and to hold an evidentiary hearing. *See* Dkts. 8, 29, 42, 49. To the extent any of Mr. O'Rourke's requests to expand the record or hold an evidentiary hearing

*(footnote continues)*

recommended a twenty-year prison sentence for each conviction. Dkt. 1 at 2; Dkt. 24-6 at 114-17.[3] The trial court adopted the jury's recommendations, ordered the sentences for the first six counts to be served consecutively, and ordered the sentences for the remaining two counts to be served concurrently with each other and with his other sentences. Dkt. 24-10 at 10-11. Through counsel, Mr. O'Rourke appealed to the Oklahoma Court of Criminal Appeals, raising eight claims. Dkt. 23-4. The OCCA denied each claim and affirmed his judgment in 2021. Dkt. 23-1. Mr. O'Rourke did not petition for a writ of certiorari to seek further direct review in the United States Supreme Court. Dkt. 1 at 3, 14.

Beginning in June 2022, Mr. O'Rourke sought postconviction relief in state district court. Dkt. 1 at 14, 17-25; Dkt. 23 at 3-4.[4] The state district court dismissed his application for postconviction relief, Mr. O'Rourke appealed, and the OCCA affirmed the denial of postconviction relief in June 2023. Dkts. 23-32, 23-34, 23-37. Mr. O'Rourke also sought relief in state district courts and the OCCA, through state habeas and mandamus petitions. *See* Dkt. 23 at 3-5.

Mr. O'Rourke filed this Petition in July 2023. He seeks federal habeas relief for all claims he raised on direct appeal (Petitioner's Propositions I through VIII), all claims he presented through his state postconviction

---

could be perceived as unresolved, the Court concludes that no expansion of the record or evidentiary hearing is needed to adjudicate any claims in the Petition. In addition, after receiving a generous extension of time to file an optional reply to the Warden's response, Mr. O'Rourke did not file one, and this Court previously determined he waived his right to do so. *See* Dkt. 42 at 6-7 n.9.

[3] Unless otherwise indicated, the Court's citations refer to the CM/ECF docket number and pagination.

[4] Petitioner raised postconviction claims through a counseled application for postconviction relief [Dkts. 23-7 through 23-14], a pro se supplement [Dkt. 23-15], a counseled second supplement [Dkts. 23-16, 23-17], and a pro se third supplement [Dkts. 23-18 through 23-27].

proceeding (Petitioner's Claims A through RR), and two claims he identifies as unexhausted (Petitioners Claims 1 and 2). Dkt. 1 at 16-25.[5] Respondent opposes the Petition, asserting that the procedural default doctrine bars review of nearly all claims, including those claims that are unexhausted, and that 28 U.S.C. § 2254(d) bars relief for the claims that the OCCA adjudicated on the merits, either on direct or postconviction appeal. Dkt. 23 at 17-128.[6]

## II.

A federal court has discretion to grant a writ of habeas corpus to a prisoner who is in state custody under a final criminal judgment if the prisoner shows he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with federal law that renders a State's criminal judgment susceptible to collateral attack in the federal courts."). But the federal habeas statutes, as amended by the Antiterrorism and Effective

[5] Because Mr. O'Rourke appears without counsel, the Court liberally construes the Petition. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). Thus, when necessary to understand the claims he asserts in the Petition, the Court considers arguments he made in state court. But "the court cannot take on the responsibility of serving as [Mr. O'Rourke's] attorney in constructing arguments" he has not made. *Id.* Mr. O'Rourke also lists four case numbers for "extraordinary writs" that he describes as "pertinent to [his] habeas appeal." Dkt. 1 at 25. To the extent Mr. O'Rourke includes in his clearly identified claims any claims he presented to the OCCA through the listed extraordinary writs, the Court considers them. But the Court has not independently searched through the listed extraordinary writs to determine which, if any, claims or arguments therein Mr. O'Rourke might view as pertinent to the Petition.

[6] As Respondent notes, Mr. O'Rourke identifies fifty-four claims, referring to some by Roman numeral, most by letter, and two by number. Dkt. 1 at 16-25. Respondent regrouped and reordered Mr. O'Rourke's claims, identifying them as Grounds I through XI, and provided an organizational chart in the Response. Dkt. 23 at 16-17. That chart is helpful to the Court in understanding which claims Respondent addresses in each section of the Response. However, for clarity, the Court refers to the claims in the order they are listed in the Petition, renaming them as Claims One through Fifty-Four. When needed for further clarity, the Court provides a cross-reference to the claims as they are identified in the Petition.

Death Penalty Act of 1996 ("AEDPA") and as interpreted by the United States Supreme Court, limit that discretion.

A.

Habeas review of federal claims generally is not available if a prisoner either did not exhaust available state remedies by presenting those claims in state court before filing a federal habeas petition, *see* 28 U.S.C. § 2254(b)(1)(A),[7] or if a prisoner presented them in state court and the "state court denied [them] based on an adequate and independent state procedural rule," *Davila v. Davis*, 582 U.S. 521, 527-28 (2017);[8] *see also Walker v. Martin*, 562 U.S. 307, 315 (2011) (discussing procedural default and explaining that "[t]he state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits"); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (discussing exhaustion requirement and concluding "that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"). In either situation, the prisoner "has deprived the state courts of an opportunity to address those claims in the first instance" and, if necessary, to remedy any constitutional errors. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991), *modified on other grounds by Martinez v. Ryan*, 566 U.S. 1 (2012).

A federal court faced with unexhausted federal claims may, *inter alia*, deem the claims procedurally defaulted "if the state court would now find the claims procedurally barred on independent and adequate state procedural grounds." *Smallwood v. Gibson*, 191 F.3d 1257, 1267 (10th Cir. 1999); *see Moore*

---

[7] There are two exceptions to the exhaustion requirement, but no one suggests either applies in this case. 28 U.S.C. § 2254(b)(1)(B), (C).

[8] A state rule is adequate if it is strictly and regularly followed and applied evenhandedly to all similar claims. *Banks v. Workman*, 692 F.3d 1133, 1145 (10th Cir. 2012) (cleaned up). A state rule is independent if the basis for the decision relies on state law rather than federal law. *Id.*

*v. Schoeman*, 288 F.3d 1231, 1233 n.3 (10th Cir. 2002) ("'Anticipatory procedural bar' occurs when the federal courts apply procedural bar to an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it."). Whether the state court applied a procedural bar or the federal court imposes an anticipatory procedural bar, the result is the same—the federal claim is procedurally defaulted and the federal court may not review it "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

Relevant here, "in certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice" to establish cause for the procedural default of another habeas claim. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). But the petitioner must show that counsel's assistance was "so ineffective as to violate the Federal Constitution" and must first present the ineffective assistance of appellate counsel claim in state court as an independent claim. *Id.* at 451-52. To establish prejudice sufficient to overcome a procedural default, the prisoner "must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). When a prisoner relies on ineffective assistance of counsel to establish cause for a procedural default, "the test for determining whether the errors that form the basis of those claims caused him [actual] prejudice mirrors the prejudice prong" under *Strickland v. Washington*, 466 U.S. 668 (1984). *Smith v. Allbaugh*, 921 F.3d 1261, 1271 (10th Cir. 2019).

Absent a showing of cause and prejudice, a prisoner may obtain habeas review of a procedurally defaulted claim only if the prisoner presents a credible claim of actual innocence. *Coleman*, 501 U.S. at 750; *see also McQuiggin v.*

*Perkins*, 569 U.S. 386, 392 (2013) ("[A] credible showing of actual innocence may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief."). "Prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Fontenot v. Crow*, 4 F.4th 982, 1030 (10th Cir. 2021) (cleaned up).

B.

Habeas review of federal claims that were properly presented in state court is available but is limited when the state's highest appellate court has adjudicated the merits of those claims. In this situation, a federal court cannot grant relief on the federal claim unless the prisoner satisfies certain preconditions. The prisoner must show that the state court's decision on the federal claim: (1) is contrary to clearly established federal law, 28 U.S.C. § 2254(d)(1); (2) is based on an unreasonable application of clearly established federal law, *id.*; or (3) is based on an unreasonable determination of the facts, *id.* 2254(d)(2).

The first two preconditions focus on the law. For purposes of § 2254(d)(1), clearly established federal law refers only to Supreme Court holdings. *See Andrew v. White*, 604 U.S. 86, 81 (2025) ("When [the Supreme] Court relies on a legal rule or principle to decide a case, that principle is a 'holding' of the Court for purposes of AEDPA."); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) ("[C]learly established Federal law . . . is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision" (internal quotation marks omitted)); *House v. Hatch*, 527 F.3d 1010, 1015-18 (10th Cir. 2008) (noting the first question for a court applying 2254(d)(1) is whether the prisoner's claim rests on law that was clearly established by Supreme Court precedent when the state court issued its decision). A state court decision is contrary to a holding of the Supreme Court only if the state court applies a different rule than the one

established by the Supreme Court or reaches a different conclusion than one reached by the Supreme Court on a case involving a set of materially indistinguishable facts. *Frederick v. Quick*, 79 F.4th 1090, 1103 (10th Cir. 2023). A state court decision applying the correct Supreme Court precedent is objectively unreasonable only if the prisoner "show[s] that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Andrew*, 604 U.S. at 92 ("An unreasonable application . . . is one with which no fairminded jurist would agree.").

The third precondition focuses on the facts underpinning the state court's decision on the federal claim. *See Harris v. Sharp*, 941 F.3d 962, 1003 (10th Cir. 2019) ("Under § 2254(d)(2), the habeas court can consider the merits only if the petitioner shows that the OCCA based its decision on the factual error."). Still, under § 2254(d)(2), the prisoner must show that the state court's determination of the facts was objectively unreasonable. A state court has not unreasonably determined the facts merely because a federal court might view the facts differently. *Frederick*, 79 F.4th at 1104. And *Richter*'s rule applies to factual determinations. *See Dunn v. Madison*, 583 U.S. 10, 12-14 (2017 ) (*per curiam*) (applying *Richter* to petitioner's argument that the state court made an "unreasonable assessment of the evidence before it"). Under § 2254(d)(2) then, a federal court "must defer to the state court's factual determinations so long as 'reasonable minds reviewing the record might disagree about the finding in question.'" *Smith v. Duckworth*, 824 F.3d 1233, 1241 (10th Cir. 2016) (quoting *Brumfield v. Cain*, 576 U.S. 305, 314 (2015)). Further, a federal court must presume the correctness of a state court's factual findings unless the prisoner presents clear and convincing evidence to rebut that presumption. 28 U.S.C. § 2254(e)(1); *Simpson v. Carpenter*, 912 F.3d 542, 563 (10th Cir. 2018).

Whether the prisoner finds fault with the state court's application of clearly established federal law or with the state court's determination of the facts relevant to the prisoner's federal claims, the prisoner "'carries the burden of proof' in satisfying AEDPA's demanding standards, . . . and 'must . . . show[] there was *no* reasonable basis for the state court to deny relief.'" *Frederick*, 79 F.4th at 1103 (emphasis and alteration in original) (first quoting *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011), then quoting *Richter*, 562 U.S. at 98); *see also Meek v. Martin*, 74 F.4th 1223, 1251 (10th Cir. 2023) ("The burden of showing that the state court's factual findings are objectively unreasonable falls squarely on the petitioner's shoulders.").

C.

Even if a prisoner satisfies § 2254(d)'s demanding preconditions or makes the showings necessary to obtain habeas review of a procedurally defaulted claim, the prisoner is not entitled to federal habeas relief. *See, e.g.*, *Brown v. Davenport*, 596 U.S. 118, 134 (2020) ("While AEDPA announced certain new conditions to relief, it did not guarantee relief upon their satisfaction. Instead, Congress left intact the equitable discretion traditionally invested in federal courts by preexisting habeas statutes. So even a petitioner who prevails under AEDPA must still today persuade a federal habeas court that 'law and justice require' relief." (quoting 28 U.S.C. § 2243)). Satisfying § 2254(d)'s preconditions or overcoming a procedural default merely earns a prisoner de novo review of the federal claim. *Milton v. Miller*, 744 F.3d 660, 670-71 (10th Cir. 2014). And even on de novo review, a federal court must apply § 2254(e)(1)'s presumption of correctness to any state-court factual findings that are relevant to the federal claim unless the prisoner rebuts those findings with clear and convincing evidence. *Sumpter v. Kansas*, 61 F.4th 729, 750 (10th Cir. 2023). Moreover, even if the federal court finds a constitutional error, the court may not grant federal habeas relief unless the petitioner "show[s] that the error had a '"substantial and injurious effect or influence"'

on the outcome of his trial." *Davenport*, 596 U.S. at 126 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

III.

A. Claims subject to de novo review and review under § 2254(d)

1. Jurisdiction

In Claim One, Mr. O'Rourke asserts that the State of Oklahoma violated his right to due process by exercising criminal jurisdiction over his prosecution because the victim, C.M., was Indian and because he committed the crimes of conviction within Indian country. *See* Dkt. 1 at 16 (Petitioner's Proposition I); *see also id.* at 14 (discussing jurisdiction claim).

Petitioner first challenged the State's exercise of criminal jurisdiction on direct appeal, primarily relying on *McGirt v. Oklahoma*, 591 U.S. 894 (2020). Dkt. 23-4 at 18-20. *McGirt* held that Congress never disestablished the Muscogee Creek Nation Reservation and, as a result, the land within that reservation is "Indian country" for purposes of applying the Major Crimes Act, 18 U.S.C. § 1153(a). *McGirt*, 591 U.S. at 924, 932. The MCA "provides that, within 'the Indian country,' '[a]ny Indian who commits' certain enumerated offenses 'against the person or property of another Indian or any other person' 'shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.'" *Id.* at 898 (quoting 18 U.S.C. § 1153(a)). *McGirt* explained (1) that "the MCA applies only to certain crimes committed in Indian country by Indian defendants," (2) that the General Crimes Act, 18 U.S.C. § 1152, "provides that federal law applies to a broader range of crimes by or against Indians in Indian country," and (3) that "States are otherwise free to apply their criminal laws in cases of non-Indian victims and defendants, including within Indian country." *Id.* at 933. Following *McGirt*, the OCCA determined that other reservations, including the Choctaw Nation Reservation, were never disestablished by Congress. *See State ex rel. Matloff v. Wallace*, 497 P.3d

686, 689 (2021) (reaffirming the OCCA's post-*McGirt* decisions recognizing continued existence of the Cherokee, Choctaw, and Chickasaw Reservations). To provide factual support for the *McGirt*-based jurisdiction claim, Mr. O'Rourke moved to supplement the appellate record with an affidavit from his mother stating (1) that the crimes occurred within the Choctaw Nation and (2) that she was familiar with C.M.'s ancestry and knew that C.M. was Choctaw with a CDIB card.[9] Dkt. 23-1 at 2-3; Dkt. 23-4 at 19. The OCCA denied the motion to supplement the record, reasoning that Mr. O'Rourke did not offer "any evidence other than hearsay to support his assertion" about C.M.'s Indian status, and thus denied the *McGirt*-based jurisdiction claim. Dkt. 23-1 at 2-3.

In his petition for postconviction relief, Mr. O'Rourke again challenged the State's exercise of criminal jurisdiction, this time framing his claim as one based on "federal preemption." Dkt. 23-7 at 17. Through counsel, Mr. O'Rourke argued: (1) that C.M.'s Indian status was irrelevant because Oklahoma's Enabling Act was "a Federal preemption to State jurisdiction despite race," (2) that the Oklahoma Constitution "disclaimed jurisdiction upon entry into the Union"; (3) that "Oklahoma never acted under Public Law 83-280 or Title IV of the Civil Rights Act to assume jurisdiction over the 'Indian Country' within its borders"; (4) that the "*McBratney/Draper* rule is

[9] "Certificates of Degree of Indian Blood ("CDIBs") are issued by the [Bureau of Indian Affairs]and are the BIA's certification that an individual possesses a specific quantum of Indian blood." *Davis v. United States*, 192 F.3d 951, 956 (10th Cir. 1999). Under existing law, proof of Indian blood is necessary to establish that either a defendant or a victim is Indian for purposes of federal prosecution under the MCA or the GCA. *See United States v. Prentiss*, 273 F.3d 1277, 1280 (10th Cir. 2001), (adopting two-part test "derived from" *United States v. Rogers*, 45 U.S. (4 How.) 567 (1846), that requires a showing that the defendant or victim "(1) has some Indian blood; and (2) is recognized as an Indian by a tribe or by the federal government").

inapplicable to Oklahoma because of the Enabling Act";[10] (5) that *McGirt* should be applied retroactively to "any void ab initio judgments"; and (6) that Mr. O'Rourke was Indian because he was "affiliated with Cherokee and Muscogee Nations and satisfie[d] political classification doctrine" through political contributions he made to both tribes. Dkt. 23-7 at 17-28. Mr. O'Rourke later supplemented his petition for postconviction relief with pro se claims asserting that appellate counsel was ineffective for failing to raise the following arguments to support his "federal preemption" claim: (1) that Mr. O'Rourke "is a direct lineal descendant of an original enrollee of the Choctaw Nation of Oklahoma and has been affiliated with multiple federally recognized tribes since at least 2005" and had applied for enrollment with the Choctaw Nation; (2) that C.M. "is a direct lineal descendant of original enrollees" of several tribes and "has held a CDIB since at least 2013"; (3) that Choctaw Nation treaties preempt State jurisdiction "irrespective of" his or C.M.'s enrollment status; (4) that *Oklahoma v. Castro-Huerta*, 597 U.S. 629 (2022), was wrongly decided and should be applied prospectively only;[11] (5) that *United States v. Rogers*, 45 U.S. 567 (1846) "was wrongly and primarily decided on the basis of race" and should be overruled; and (6) that "Oklahoma State District Courts in Indian Country are preempted by federal law

---

[10] *See Draper v. United States*, 164 U.S. 240, 247 (1896) (concluding that the State of Montana had criminal jurisdiction over a non-Indian defendant murdering a non-Indian victim within the Crow Indian reservation); *United States v. McBratney*, 104 U.S. 621, 624 (1881) (concluding that the State of Colorado had "jurisdiction of the crime of murder committed by a white man upon a white man within the Ute Reservation").

[11] *Castro-Huerta* held that that the GCA "does not preempt state jurisdiction over crimes committed by non-Indians against Indians in Indian country." 597 U.S. at 647. *Castro-Huerta* also held that Public Law 280 is a not a source of preemption; that the balancing test developed in *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136 (1980), "does not bar the State from prosecuting crimes committed by non-Indians against Indians in Indian country"; that certain treaties "do not preempt Oklahoma's authority to prosecute; and that the Oklahoma Enabling Act does not preempt Oklahoma's authority to prosecute (indeed, it solidifies the State's presumptive sovereign authority to prosecute)." *Id.* at 647-51, 655-56.

from exercising jurisdiction over offenses committed by an individual." Dkt. 23-32 at 6-8. The state district court determined that Mr. O'Rourke's post-conviction "Indian Claims" failed because he was "not an Indian for purposes of criminal jurisdiction." *Id.* at 19. Applying *Prentiss*, the state district court found that Mr. O'Rourke failed to present "prima facie evidence" to show either (1) that he has had some degree of Indian blood or (2) that he was recognized as an Indian by a tribe or by the federal government. *Id.* at 19-20; *see Prentiss*, 273 F.3d at 1280. Applying *Castro-Huerta*, the state district court further reasoned that the State was not preempted from exercising jurisdiction over crimes that Mr. O'Rourke, a non-Indian, committed in Indian country against C.M., the "Indian victim." *Id.* at 21-22.

Mr. O'Rourke argued on postconviction appeal that the state district court could not apply *Castro-Huerta* retroactively because his judgment was final before *Castro-Huerta* was decided. Dkt. 23-34 at 9-11. He also argued that he "exceeded his prima facie requirement of the complainant's Indian status," and, to support this argument, he submitted exhibits from a Tulsa County juvenile proceeding involving C.M. *Id.* at 12-13, 57-64, 68-78. In addition, Mr. O'Rourke argued that he "established his direct lineal descent from an Original Enrollee on the Choctaw Nations' Dawes Rolls," specifically, his "great-great-grandmother" whom he identified as "an Original Enrollee on the Intermarriage Roll," and that he intended to challenge the Supreme Court's decision in *Rogers* because "the so-called *Rogers* test is a racial test." *Id.* at 15. The OCCA affirmed the state district court's order denying postconviction relief. Dkt. 23-37.[12]

---

[12] Mr. O'Rourke also sought postconviction relief or other collateral review of his judgment on his jurisdiction claims through a petition for writ of habeas corpus filed in the District Court of Alfalfa County and through mandamus actions filed in the OCCA. *See* Dkts. 23-35, 23-36, 23-38, 23-39, 23-41, 23-46. In a mandamus petition filed in the OCCA in April 2023, Mr. O'Rourke attempted to "exhaust his MCA and *Rogers* attack," i.e., claims that the MCA and *Rogers* are facially unconstitutional and unconstitutional as applied to *(footnote continues)*

In the Petition, Mr. O'Rourke reasserts the *McGirt*-based claim (Claim One); the federal preemption claim (Claim Thirty-One); a "claim" that *Rogers* was wrongly decided (Claim Thirty-Three); and a "claim" that *Castro-Huerta* "applies prospectively only and was wrongly decided" (Claim Thirty-Four). *See* Dkt. 1 at 16, 22 (Petitioner's Proposition I and Claims W, Y, and Z).[13] In support of these claims, Mr. O'Rourke appears to rely on the same arguments he presented in state court proceedings and his supplemental timeline. Dkt. 1 at 14, 16, 22; Dkt 12.[14]

Respondent urges the Court to deny Claim One either because the OCCA reasonably applied clearly established federal law to reject it and § 2254(d) bars relief, or because it "undeniably fails on the merits" even on de novo review. Dkt. 23 at 22-28. Respondent contends that Claim Thirty-Four should be denied because *Castro-Huerta*, like most judicial decisions, applies retrospectively. *Id.* at 28-30. Respondent further contends that Claims Thirty-One and Thirty-Three are procedurally defaulted because the OCCA determined that Mr. O'Rourke waived them by not raising them on direct appeal, and Mr. O'Rourke has not shown that he can overcome the procedural default of either claim. *Id.* at 123-26.

---

him. Dkt. 23-35 at 21. The OCCA declined to exercise jurisdiction over the mandamus petition, finding that the petition was untimely under state procedural rules. Dkt. 23-36 at 2. The Court does not read any of Mr. O'Rourke's claims, including his claim that *Rogers* was "wrongly decided," as challenging the constitutionality of the MCA or *Rogers*.

[13] Claims Thirty-Three and Thirty-Four (Petitioner's Claims Y and Z) are more accurately described as arguments in support of his claim that the State improperly exercised criminal jurisdiction. Relatedly, Mr. O'Rourke includes both arguments to support Claim Twenty-One where he reasserts his postconviction claim that appellate counsel was ineffective for inadequately raising the jurisdiction and/or preemption claim. *See* Dkt. 1 at 19 (Petitioner's Claim M). The Court considers Claim Twenty-One with all other ineffective assistance of appellate counsel claims.

[14] In the Petition, Mr. O'Rourke twice refers to a brief in support he apparently intended to file to further develop his arguments on all claims. Dkt. 1 at 5, 17. But he has not filed a supporting brief. As needed to better understand his claims, the Court therefore considers arguments he made in state court.

The Court finds that all four claims "may be disposed of in a straightforward fashion on substantive grounds" and thus exercises its discretion to "bypass" any potential procedural bars, forgo consideration of whether § 2254(d) bars relief, and reject these claims on the merits. *See Smith*, 824 F.3d at 1242 (stating that "where 'the claim may be disposed of in a straightforward fashion on substantive grounds,' [a] court retains discretion to bypass the procedural bar and reject the claim on the merits" (quoting *Revilla v. Gibson*, 283 F.3d 1203, 1210-11 (10th Cir. 2002))).

Claims One and Thirty-One fail because Mr. O'Rourke concedes he is not Indian for purposes of federal law. Dkt. 30 at 25; *see also* Dkt. 42 at 15 (discussing Mr. O'Rourke's concession and its impact on his jurisdiction claims). *McGirt* affords him no relief because the MCA applies only to Indian defendants who commit certain crimes in Indian country. 18 U.S.C. § 1153(a); *McGirt*, 591 U.S. at 939. And even accepting as true that C.M. was Indian, *Castro-Huerta* forecloses relief because *Castro-Huerta* held that the GCA "does not preempt state jurisdiction over crimes committed by non-Indians in Indian country" and that "the Federal Government and the State have concurrent jurisdiction to prosecute crimes committed by non-Indians against Indians in Indian country." 597 U.S. at 647, 656. Claims Thirty-Three and Thirty-Four likewise lack merit. To the extent Mr. O'Rourke claims *Castro-Huerta* applies only prospectively, Respondent correctly argues that new judicial decisions generally apply retrospectively. *See De Niz Robles v. Lynch*, 803 F.3d 1165, 1170 (10th Cir. 2015) ("Quite the opposite from legislation (and with equal certainty) we can say that judicial decisions 'have had retrospective operation for near a thousand years.'" (quoting *Kuhn v. Fairmont Coal Co.*, 215 U.S. 349, 372 (1910) (Holmes, J., dissenting))). And "prospectivity [is] the exception" to that general rule. *United States v. Cuch*, 79 F.3d

987, 995 (10th Cir. 1996).[15] And to the extent Mr. O'Rourke claims *Rogers*, or *Castro-Huerta*, were "wrongly decided," this Court has previously explained to Mr. O'Rourke that a federal district court remains bound by Supreme Court decisions unless and until the Supreme Court overrules them. *See* Dkt. 42 at 17 n.18. For these reasons, the Court denies the Petition on Claims One, Thirty-One, Thirty-Three, and Thirty-Four (Petitioner's Proposition I and Claims W, Y, and Z).

2. Exclusion of evidence

In Claim Seven, Mr. O'Rourke asserts that the trial court violated his constitutional rights to due process and to present a defense by refusing to admit certain photographs that he describes as material and exculpatory. Dkt. 1 at 17. He presented this claim on direct appeal, and the OCCA rejected it. Dkt. 23-4 at 27-32; Dkt. 23-1 at 5. The OCCA reasoned:

> In Proposition VII, [Mr. O'Rourke] argues he was denied his right to due process and to present a defense when the trial

---

[15] To the extent Mr. O'Rourke incorporates any arguments he may have made in state court that applying *Castro-Huerta* retrospectively violates due process or the prohibition against ex post facto laws, those arguments also fail. *See Rogers v. Tennessee*, 532 U.S. 451, 462 (2001) (stating it "has long been settled by the constitutional text and [Supreme Court] decisions: that the Ex Post Facto Clause does not apply to judicial decisionmaking" and concluding "that a judicial alteration of a common law doctrine of criminal law violates the principle of fair warning, and hence must not be given retroactive effect, only where it is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.'" (quoting *Bouie v. City of Columbia*, 378 U.S. 347, 384 (1964))); *Purdom v. State*, 523 P.3d 54, 59 (Okla. Crim. App. 2022) (applying *Bouie*; rejecting defendant's argument that due process requires *Castro-Huerta* to be applied only prospectively; and reasoning that *Castro-Huerta* "addressed whether the State, the Federal Government, or both, could prosecute [the appellant] for his actions and conduct in this case which were plainly criminal under the laws of either sovereign," "resolved the jurisdictional question of the appropriate forum for the prosecution of crimes committed by non-Indians against Indians on the reservation through its interpretation and application of federal law that predates [the appellant's] crimes," "does not retroactively convert an innocent act into a crime through the 'judicial construction of a criminal statute [that] is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue,'" and "does not implicate the Due Process Clause in this context").

> court refused to admit photographs depicting his surgical scars. The record shows there was no foundation laid as to whether the scars looked the same in the photographs as Appellant looked at the time of the crimes. The trial court did not abuse its discretion. *Baird v. State*, 2017 OK CR 16, ¶ 38, 400 P.3d 875, 886. [Mr. O'Rourke] could, and did, testify (a) that he had surgical scars at the time of the crimes, and (b) that he didn't commit the crimes at all. Exclusion of the offered pictures of his scars was neither relevant, material nor vital to his defense. *Harris v. State*, 2019 OK CR 22, ¶ 24, 450 P.3d 933, 945. This proposition is denied.

Dkt. 23-1 at 5.

Respondent contends § 2254(d) bars relief on Claim Seven because Mr. O'Rourke has not shown that the OCCA's decision is contrary to clearly established federal law, involves an unreasonable application of clearly established federal law, or is based on an unreasonable determination of the facts presented in state court. Dkt. 23 at 47-56. The Court agrees. "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment . . . or in the Compulsory Process or Confrontation clauses of the Sixth Amendment . . . the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citations omitted). But "reasonable restrictions" do not offend this constitutional guarantee. *See United States v. Scheffer*, 523 U.S. 303, 308 (1998) ("A defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions."). And "[w]hile the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006).

The OCCA thoroughly discussed these controlling legal principles in *Harris*, 450 P.3d at 945; identified them as governing Mr. O'Rourke's claim through its reference to *Harris* in its decision; and reasonably applied them to the facts presented in state court, *see* Dkt. 23 at 47-51 (discussing relevant trial testimony, trial court's evaluation of proffered photographs, and trial court's decision to exclude photographs). Mr. O'Rourke reasserts his claim that the trial court violated his right to due process by excluding the proffered photographs but offers no argument or facts to support a finding by this Court that the OCCA's decision rejecting his claim is objectively unreasonable. Because Mr. O'Rourke has not met his burden to satisfy the preconditions in § 2254(d), the Court denies Claim Seven in the Petition (Petitioner's Proposition VII).

3. Judicial bias

In Claim Eight, Mr. O'Rourke asserts that the trial court violated due process and his right to a fair trial "by Failing to Disclose Extreme Facts and Extrajudicial Statements and Failing to Disqualify." Dkt. 1 at 17. Mr. O'Rourke presented this claim to the OCCA through a pre-sentencing petition for writ of mandamus and his direct appeal. Dkt. 23-3; Dkt. 23-4 at 32-40; Dkt. 23-1 at 5-6. In both instances, the OCCA denied relief.

In denying the mandamus petition, the OCCA discussed the grounds on which Mr. O'Rourke sought the trial judge's recusal and the hearings that were held in district court to address his concerns. Dkt. 23-3 at 1-3. The OCCA noted the "high" standards for obtaining mandamus relief and found that Mr. O'Rourke did not show that the trial judge "refused to perform 'a plain legal duty not involving the exercise of discretion.'" *Id.* at 2-3. The OCCA further found that the record Mr. O'Rourke submitted for review did not establish either "a clear abuse of discretion" or "conduct amounting to usurpation of [judicial] power." *Id.* at 3 (quoting *Mallard v. U. S. Dist. Ct. for the S. Dist. of Iowa*, 490 U.S. 296, 309 (1989)). In addition, the OCCA reasoned that "'[r]umor, speculation, beliefs, conclusions, innuendo, suspicion,

opinion, and similar non-factual matters' are not ordinarily sufficient to require recusal." *Id.* at 3 (quoting *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993). *Id.*

On direct appeal, the OCCA effectively declined to reconsider its prior denial of this claim, stating:

> In Proposition VIII [Mr. O'Rourke] claims the trial court should have recused from imposing sentence. After the trial but before sentencing, [he] asked the trial court to recuse herself. That request was denied. [He] appealed that decision, first in the District Court, and then to this Court through a petition for writ of mandamus. This Court denied relief. *O'Rourke v. State*, No. MA-2019-829 (Okl. Cr. Nov. 27, 2019) (not for publication). He now raises exactly the same claim on direct appeal that he raised below and in this Court through the writ of mandamus. As the Court has already rejected this claim, this proposition is barred. *Smith v. State*, 2013 OK CR 14, ¶ 15, 306 P.3d 557, 565; *Carter v. State*, 1997 OK CR 22, ¶ 16, 936 P.2d 342, 346-47. This proposition is denied.

Dkt. 23-1 at 5-6.

Respondent primarily contends that § 2254(d) bars relief because "a fairminded jurist could agree with the OCCA's denial of this claim [as] nothing in the record shows [the trial judge], was biased." Dkt. 23 at 56-65.[16] Having considered portions of the state court record relevant to Mr. O'Rourke's allegations of judicial bias, the Court agrees that § 2254(d) bars relief. "A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955). But the Supreme Court has explained that "[t]he

[16] Respondent briefly asserts that Mr. O'Rourke did not exhaust his judicial bias claim as a federal claim because he relied "almost entirely on state law and Oklahoma's Code of Judicial Conduct." Dkt. 23 at 56. However, in a subsequent footnote, Respondent suggests the OCCA treated the claim as a due process claim and states that Respondent therefore "treats his due process claim as exhausted." *Id.* at 62 n.27. The Court thus considers only Respondent's argument that § 2254(d) bars relief.

Due Process Clause demarks only the outer boundaries of judicial disqualifications," that "codes of judicial conduct provide more protection than due process requires," and that "most disputes over disqualification will be resolved without resort to the Constitution." *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 876, 889-90 (2009). In determining whether due process requires recusal, courts apply "an objective standard that requires recusal when the likelihood of bias on the part of the judge is too high to be constitutionally tolerable." *Williams v. Pennsylvania*, 579 U.S. 1, 4 (2016).

As previously stated, the OCCA considered Mr. O'Rourke's evidence and arguments in support of his view that the trial judge was required to recuse. *See* Dkt. 23-3 at 1-3 (OCCA order denying mandamus petition); Dkt. 23-44 (mandamus petition describing alleged grounds for recusal). Mr. O'Rourke presents no facts or arguments to suggest, let alone show, that the OCCA's decision rejecting his judicial bias claim is contrary to clearly established federal law, involves an unreasonable application of clearly established federal law, or is based on an unreasonable determination of the facts that were presented in state court. Because Mr. O'Rourke has not shown that he can satisfy any preconditions in § 2254(d), the Court denies the Petition as to Claim Eight (Petitioner's Proposition VIII).

4. Ineffective assistance of appellate counsel

Next, Mr. O'Rourke claims he was denied his constitutional right to the effective assistance of appellate counsel because counsel omitted or failed to adequately raise the claims Mr. O'Rourke identifies in Claims Nine through Twenty-Nine, Thirty-Two,[17] and part of Thirty-Nine. *See* Dkt. 1 at

[17] Claim Thirty-Two does not identify any specific claims omitted or inadequately raised. Instead, that claim asserts, generally, that "Petitioner's right to Direct Appeal was denied by Appellate Counsel's ineffectiveness." Dkt. 1 at 22 (Petitioner's Claim X). Review of Mr. O'Rourke's postconviction filings reveals that he supported this claim in state court by alleging appellate counsel failed to follow the OCCA's rules, failed to include standards of review in the appellate brief, "failed to include numerous structural error claims

*(footnote continues)*

17-22 (Petitioner's claims A through U, X, and part of EE). Petitioner raised these claims in his application for postconviction relief. *Id.*; *see also* Dkt. 23-32 at 4-10 (state district court order identifying postconviction claims).

Applying *Strickland v. Washington*, 466 U.S. 668 (1984), and *Logan v. State*, 293 P.3d 969 (Okla. Crim. App. 2013), the state district court determined Mr. O'Rourke did not establish either that appellate counsel performed deficiently by omitting or allegedly failing to adequately to raise the myriad claims Mr. O'Rourke identified or that appellate counsel's allegedly deficient performance prejudiced him. Dkt. 23-32 at 14-19.

On postconviction appeal, the OCCA acknowledged that a postconviction proceeding provides a defendant with the first opportunity to raise ineffective assistance of appellate counsel claims. Dkt. 23-37 at 5-6. After enunciating the standards in *Strickland* and adopted in *Logan*, both of which recognize that evaluating counsel's alleged ineffectiveness "requires an examination of the merit of any issues omitted on direct appeal," the OCCA stated:

> Applying this standard, the district court found Petitioner's claims of ineffective assistance of appellate counsel were without merit because the issues Petitioner faulted counsel for omitting on direct appeal were themselves meritless and would not have prevailed had they been raised. Petitioner has not shown that the district court's decision was clearly erroneous or clearly against the logic and effect of the facts presented.

*Id.* at 6.

---

Petitioner demanded be presented in his Direct Appeal," "failed to investigate, identify, and/or include multiple state and federal constitutional errors for cumulative error purposes as well as numerous structural errors, even though Petitioner insisted they be included in his Direct Appeal," and "failed to raise an issue of great importance to present and preserve for Supreme Court review," namely, Mr. O'Rourke's claim that *Rogers* "is explicitly based on race and is egregiously wrong." Dkt. 23-18 at 11-16.

Respondent thoroughly discusses the claims Mr. O'Rourke identifies as wrongly omitted or poorly presented by appellate counsel. Dkt. 23 at 66-116. Respondent contends that § 2254(d) bars relief because the OCCA's decision rejecting Mr. O'Rourke's ineffective assistance of appellate counsel claims was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable factual determination. *Id.* The Court agrees with that assessment. The Sixth Amendment and the Fourteenth Amendment's Due Process Clause guarantee the right to effective assistance of counsel at trial and on a defendant's first appeal as of right. *Strickland*, 466 U.S. at 685-86; *Evitts v. Lucey*, 469 U.S. 387, 388-89, 396 (1985). *Strickland* establishes a two-part inquiry for evaluating ineffective assistance of counsel claims—requiring a petitioner to show deficient performance and resulting prejudice—and that inquiry applies to a claim that appellate counsel was ineffective for omitting or inadequately raising nonfrivolous claims. *Smith v. Robbins*, 528 U.S. 259, 285, 289 (2000); *Strickland*, 466 U.S. at 687-691, 694. When appellate counsel has filed a merits brief, "it is difficult to demonstrate that counsel was incompetent." *Robbins*, 528 U.S. at 288. This is so because the Supreme Court has "held that appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Id.* (citing *Jones v. Barnes*, 463 U.S. 745 (1983)); *see also Frederick*, 79 F.4th at 1105 (noting that the "Sixth Amendment does not require appellate counsel to raise every nonfrivolous issue" and that "appellate attorneys frequently winnow out weaker claims in order to focus effectively on those more likely to prevail" (cleaned up)). In evaluating appellate counsel's performance, a reviewing court must apply "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* (quoting *Strickland*, 466 U.S. at 689). And when a petitioner alleges counsel performed deficiently by omitting certain issues, a court typically must examine the merits of the omitted

issue. *Id.* Even if a petitioner shows appellate counsel performed deficiently, the petitioner still must show resulting prejudice. "In the context of an ineffective assistance of appellate counsel claim, this means the defendant 'must show a reasonable probability that, but for his counsel's unreasonable failure to' raise a particular nonfrivolous issue, 'he would have prevailed on his appeal.'" *Id.* (quoting *Milton*, 744 F.3d at 669). Finally, a reviewing court "may address the two *Strickland* prongs in either order and need not address both if the defendant has failed to satisfy one." *Id.*

Mr. O'Rourke has not shown that the OCCA's decision rejecting his ineffective assistance of appellate counsel claims is contrary to clearly established federal law, nor could he. The OCCA correctly identified *Strickland*'s two-part inquiry as the Supreme Court rule governing the analysis of Mr. O'Rourke's claims. Thus, the only question under § 2254(d)(1) is whether the OCCA unreasonably applied *Strickland* to the facts of his case, *Pinholster*, 563 U.S. at 182, and the question under § 2254(d)(2) is whether the OCCA based its decision on an unreasonable determination of the facts that were presented in state court, *Harris*, 941 F.3d at 1003. But Mr. O'Rourke offers no legal or factual bases for this Court to answer either question in his favor. Rather, he simply reasserts each ineffective assistance of appellate counsel claim he presented to the OCCA as if he were presenting them to this Court for the first time. That is not how federal habeas review works when § 2254(d) applies. As previously stated, when a state court has adjudicated the merits of a federal claim § 2254(d) places the burden on the habeas petitioner to "'show[] there was *no* reasonable basis for the state court to deny relief.'" *Frederick*, 79 F.4th at 1103 (emphasis and alteration in original) (quoting *Richter*, 562 U.S. at 98); *see also Meek*, 74 F.4th at 1251 ("The burden of showing that the state court's factual findings are objectively unreasonable falls squarely on the petitioner's shoulders."). The burden is weightier when *Strickland* governs the claims that are subject to review under § 2254(d). *See Richter*, 562 U.S. at 105 ("The standards created by *Strickland* and § 2254(d)

are both highly deferential, and when the two apply in tandem, review is doubly so."). Given the absence of any argument from Mr. O'Rourke that the OCCA either unreasonably applied *Strickland* to the facts of his case or unreasonably determined the facts relevant to its decision, the Court finds he has not shouldered his heavy burden to meet the preconditions in § 2254(d)(1) or (d)(2).[18] For these reasons, the Court denies the Petition on Claims Nine through Twenty-Nine, Thirty-Two, and part of Thirty-Nine. (Petitioner's Claims A through U, X, and part of EE).

### B. Claims that are procedurally defaulted

#### 1. Sufficiency of charging document/jury unanimity

In Claims Two through Five, Mr. O'Rourke contends he was deprived of due process because the State did not "factually distinguish the allegations" to support each count of conviction and thus did not "provide sufficient notice of the charges" against him. Dkt. 1 at 17 (Petitioner's Propositions II through V).

Mr. O'Rourke raised these claims on direct appeal. There, he argued that "the fourth amended information . . . alleged very general allegations, borrowing language from the statutes, however, the state failed to allege enough information to determine which factual allegation the counts were referencing or charging [him] with" and that it was therefore "impossible to tell if the jury's decision was unanimous or not." Dkt. 23-4 at 20-21. For each count, he then described why it was "impossible" to tell from the indictment and the trial testimony whether the verdict on each count was unanimous. *Id.* at 21-26. The OCCA found that Mr. O'Rourke waived these claims, stating:

---

[18] Because Mr. O'Rourke appears without counsel, the Court has liberally construed his Petition and has referenced the arguments and supporting facts he presented to the OCCA to better understand his claims. *See supra* n.5. But the Court has not assumed the role of advocate by attempting to construct arguments or find facts in the record that might help Mr. O'Rourke meet § 2254(d)'s preconditions as to the ineffective assistance of counsel claims or as to any other claims that the OCCA adjudicated on the merits.

> In Propositions II, III, IV, and V, [Mr. O'Rourke] claims that the State failed to "factually distinguish" the allegations in Counts 1, 2, 3, and 6 from those alleged in other Counts of the Information. These propositions are without merit. [He] supports each proposition with a single legal argument, set out separately from the propositions of error. For authority, he quotes three sentences -one each from a case from [the OCCA] and two cases from other jurisdictions. He fails to provide a standard of review. This does not comply with our Rules, and [he] has waived these claims. Rule 3.5(A), (C), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2021). Propositions II, III, IV, and V are denied.

Dkt. 23-1 at 3-4.

Respondent contends that Claims Two through Five are procedurally defaulted because the OCCA applied an independent and adequate procedural rule to deny relief. Dkt. 23 at 31-36. The Court agrees. The OCCA determined that Mr. O'Rourke waived these claims by failing to comply with OCCA Rule 3.5. This rule "is a generally sound state-law procedural rule that has been found adequate to foreclose review of a federal claim in Oklahoma's federal habeas courts." *Davis v. Bryant*, No. CIV-15-513-M, 2017 WL 8233900, *7 (W.D. Okla. Aug. 25, 2017) (unpublished)[19] (internal citations and quotation marks omitted) (quoting *Lee v. Kemna*, 534 U.S. 362, 376 (2002)); *see Cole v. Trammell*, 755 F.3d 1142, 1176 (10th Cir. 2014) (concluding the petitioner's claim was "unexhausted and procedurally barred for purposes of federal habeas review" because the OCCA treated the issue as not properly raised under Rule 3.5(A)(5)); *Dangerfield v. Hargett*, No. 94-6314, 1995 WL 307584, at *1-2 (10th Cir. May 11, 1995) (unpublished) (holding that claims rejected by the OCCA under Rule 3.5 were procedurally barred and noting the OCCA "has consistently dismissed claims for failure to properly

---

[19] The Court cites all unpublished decisions herein as persuasive authority. Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

file supporting citations and authority"); *Yelton v. Bryant*, No. 15-cv-130-GKF-PJC, 2018 WL 10670436, at *4 (N.D. Okla. June 6, 2018) (unpublished) (reasoning that OCCA Rule 3.5 is an adequate and independent state procedural bar).

Because the OCCA applied an adequate and independent state procedural rule and declined to reach the merits of Claims Two through Five, Mr. O'Rourke procedurally defaulted these claims. Unless he makes the showings necessary to overcome the procedural default, this Court cannot review them. Mr. O'Rourke appears to rely on one or more of his ineffective assistance of appellate counsel claims to establish cause for defaulting Claims II through V. *See, e.g.*, Dkt. 1 at 18, 22 (Petitioner's Claims L and X). But as previously discussed, the OCCA determined that Mr. O'Rourke did not establish that appellate counsel provided constitutionally deficient representation, and this Court determined that Mr. O'Rourke has not shown that the OCCA's decision finding no constitutional violation is objectively unreasonable as a matter of law or a matter of fact. *See supra* section III.A.4. Thus, Mr. O'Rourke cannot rely on appellate counsel's alleged ineffectiveness to establish cause and prejudice for the procedural default of Claims Two through Five. *See Carpenter*, 529 U.S. at 451 (noting that when a petitioner relies on counsel's alleged ineffective assistance to establish cause for a procedural default, "the assistance must have been so ineffective as to violate the Federal Constitution"); *Sherrill v. Hargett*, 184 F.3d 1172, 1176 (10th Cir. 1999) ("Petitioner's ineffective assistance of appellate counsel claim therefore has no merit and cannot constitute 'cause' for his procedural default in state court."). The Court therefore denies Claims Two through Five of the Petition (Petitioner's Propositions II through V).[20]

---

[20] As discussed, a petitioner may also overcome a procedural default by showing that a federal court's failure to review the federal claim would result in a miscarriage of justice. *Coleman*, 501 U.S. at 750. But the miscarriage of justice exception applies only if a

*(footnote continues)*

2. Double jeopardy

In Claim Six, Mr. O'Rourke contends that his convictions and sentences for counts one and two violate his Fifth Amendment right to be free from double jeopardy. Dkt. 1 at 17.

Mr. O'Rourke raised a similar claim on direct appeal. There, he asserted: "Title 21, O.S. § 11 and the Double Jeopardy provisions of the Oklahoma Constitution, Article 2 § 21, and United States Constitution, Fifth Amendment, make it unlawful to convict [him] of two crimes based upon the same act." *Id.* Mr. O'Rourke's legal argument then focused exclusively on Section 11's statutory prohibition against multiple punishments for "a criminal act or omission." Dkt. 23-4 at 26-27. The OCCA considered whether his convictions for counts one and two violated the "statutory prohibition against multiple punishment" and denied relief. Dkt. 23-1 at 4. The OCCA reasoned:

> In Count I Appellant was charged with exposing his penis to the victim and trying to or putting his penis in her mouth. In Count II he was charged with putting his mouth on her vagina. These are separate and distinct crimes. Separate offenses which require different proof do not violate § 11, even if they occur in

---

petitioner presents a credible claim of actual innocence. *Fontenot*, 4 F.4th at 1029. "To be credible, a claim of actual innocence requires a petitioner to present 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Id.* at 1031 (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). In the Petition, Mr. O'Rourke does not claim that he is actually innocent or identify any new evidence. Dkt. 1, generally. That is reason alone not to apply the miscarriage of justice exception. Further, even generously construing the Petition as incorporating the assertion of actual innocence he presented to the OCCA on post-conviction appeal, that assertion appears to rest on allegations of fabricated evidence and perjured testimony, not trustworthy, exculpatory evidence that might support a credible actual innocence claim. Dkt. 23-34 at 16-27; *see Parks v. Cline*, 786 F. App'x 759, 763 (10th Cir. 2019) (holding that the petitioner's "self-serving and unsubstantiated" allegation that his second wife perjured herself was insufficient to make a colorable claim of actual innocence and permit review of a procedurally defaulted claim). The Court thus finds that Mr. O'Rourke has not presented a credible claim of actual innocence that would permit habeas review of any procedurally defaulted claims.

rapid succession.

*Id.*

Respondent contends Claim Six is unexhausted because Mr. O'Rourke's passing reference to the Fifth Amendment was not sufficient to fairly present a federal claim to the OCCA. Dkt. 23 at 37-43. Respondent further contends Claim Six should be deemed procedurally defaulted because the OCCA likely would find a federal claim alleging a double jeopardy violation waived if Mr. O'Rourke were to present it in a subsequent state postconviction proceeding. *Id.* The Court agrees with both contentions. While Mr. O'Rourke's counseled appellate brief mentioned the Fifth Amendment and "the Double Jeopardy provision[]" of the federal constitution, his entire argument focused on state law—specifically, Section 11's prohibition against multiple punishments. Dkt. 23-4 at 26-27. This is not sufficient to exhaust a Fifth Amendment double jeopardy claim. *See Grant v. Royal*, 886 F.3d 874, 890 (10th Cir. 2018) (explaining that exhaustion requires fair presentation of a federal claim and "fairly presented . . . means that the petitioner has raised the substance of the federal claim in state court"); *Walker v. Patton*, 671 F. App'x 703, 704 (10th Cir. 2016) ("We have carefully examined [the petitioner's] arguments in the OCCA and find that they were limited to whether he received multiple punishments for the same crime in violation of the Oklahoma statute—not the Double Jeopardy Clause of the United States Constitution. He therefore failed to exhaust his remedies."); *Wilder v. Cockrell*, 274 F. 3d 255, 260 (5th Cir. 2001) (noting that "a fleeting reference to the federal constitution, tacked onto the end of a . . . purely state-law . . . argument . . . does not sufficiently alert and afford a state court the opportunity to address an alleged violation of federal rights"). The Court also finds it appropriate to apply an anticipatory procedural bar and deem Claim Six procedurally defaulted because the OCCA very likely would apply its well-established waiver rule should Mr. O'Rourke raise a Fifth Amendment double jeopardy claim in a subsequent state postconviction proceeding. *See Cummings v.*

*Sirmons*, 506 F.3d 1211, 1222-23 (10th Cir. 2007) (concluding that the petitioner's claim was "technically unexhausted" and finding it was "beyond dispute" that the OCCA would impose a procedural bar if the petitioner presented the claim through a second application for postconviction relief).

Based on the foregoing, the Court finds that Mr. O'Rourke procedurally defaulted Claim Six. Mr. O'Rourke, however, appears to contend appellate counsel's ineffectiveness should excuse the procedural default. *See* Dkt. 1 at 18 (alleging in Petitioner's Claim E that appellate counsel was ineffective for "not raising double jeopardy under the *Blockburger* test"); *see also* Dkt. 23-7 at 32 (asserting in application for postconviction relief that appellate counsel "failed to preserve the federal nature of his double jeopardy claim for federal review by only arguing state law"). But because he has not shown that the OCCA unreasonably rejected his ineffective assistance of appellate counsel claims, he cannot rely on appellate counsel's allegedly ineffective failure to raise the Fifth Amendment double jeopardy claim to establish cause and prejudice for the procedural default of Claim Six. *Carpenter*, 529 U.S. at 451; *Sherrill*, 184 F.3d at 1176. The Court therefore denies the Petition as to Claim Six (Petitioner's Proposition VI).

3. Remaining postconviction claims

In Claims Thirty, Thirty-Five through Thirty-Eight, part of Thirty-Nine, and Forty through Fifty-Two, Mr. O'Rourke reasserts claims he raised for the first time in his application for postconviction relief and that were not presented as ineffective assistance of appellate counsel claims. *See* Dkt. 1 at 21-25 (Petitioner's Claims V, AA through DD, part of EE, and FF through RR).

The state district court found these claims were procedurally barred under Okla. Stat. tit. 22, § 1086 because they "should have been raised on direct appeal." Dkt. 23-32 at 13-14. The OCCA agreed with the state district court "that except as related to his allegations of ineffective assistance of

appellate counsel, consideration of [Mr. O'Rourke's] post-conviction claims were procedurally barred, by waiver or *res judicata*, because they either were or could have been raised on direct appeal" and he did not "show[] sufficient reason for failing to previously raise or adequately assert these issues on direct appeal." Dkt. 23-37 at 3-4.

Respondent contends that these claims are procedurally defaulted because the OCCA applied its well-established waiver rule to deny these claims on procedural grounds. Dkt. 23 at 116-23. The Court agrees. Section 1086 is an adequate and independent state procedural rule. *See Reese v. Yates*, 778 F. App'x 552, 557 (10th Cir. 2019) (noting that the Tenth Circuit has "repeatedly determined that § 1086 is independent of federal law and an adequate procedural bar"); *Stiltner v. Nunn*, No. 21-cv-374-GKF-CDL, 2022 WL 951997, at *7 (N.D. Okla. Mar. 29, 2022) (unpublished) (holding that the petitioner's claim was procedurally barred to the extent the OCCA's decision rested on application of its waiver rule).

Because the OCCA applied an adequate and independent state procedural rule to deny these claims, this Court cannot review them unless Mr. O'Rourke makes the showings necessary to overcome the procedural default. Mr. O'Rourke does not allege ineffective assistance of appellate counsel as cause for failing to raise these claims on direct appeal or that he will suffer prejudice if this Court does not review them. Dkt. 23 at 125. Further, as previously stated, Mr. O'Rourke has not presented a credible claim of actual innocence that would permit review of any procedurally defaulted claims. *See supra* n.20. The Court therefore denies Claims Thirty, Thirty-Five through Thirty-Eight, part of Thirty-Nine, and Forty through Fifty-Two (Petitioner's Claims V, AA through DD, part of EE, and FF through RR).

4. Unexhausted claims

Respondent contends, and Mr. O'Rourke concedes, that he did not exhaust available state remedies for his last two claims: Claims Fifty-Three

and Fifty-Four. Dkt. 1 at 25 (Petitioner's Claims 1 and 2); Dkt. 23 at 126-27. Respondent further contends that both claims are subject to an anticipatory procedural bar and Mr. O'Rourke cannot make the showings necessary to obtain habeas review of these claims. Dkt. 23 at 127-28. The Court agrees that Mr. O'Rourke procedurally defaulted both claims and that he has neither attempted to show nor shown that he can overcome the procedural default of either claim.[21] The Court thus denies Claims Fifty-Three and Fifty-Four (Petitioner's Claims 1 and 2).

## IV.

The Court concludes: (1) Claims One, Thirty-One, Thirty-Three, and Thirty-Four (Petitioner's Proposition I and Claims W, Y, and Z) should be denied because, even on de novo review, they lack merit; (2) Claims Seven, Eight, Nine through Twenty-Nine, Thirty-Two, and part of Thirty-Nine (Petitioner's Propositions VII, VIII and Claims A through U, X, and part of EE) should be denied because 28 U.S.C. § 2254(d) bars relief; and (3) Claims Two through Six, Thirty, Thirty-Five through Thirty-Eight, part of Thirty-Nine,

---

[21] Even if these unexhausted claims were not procedurally defaulted, neither has merit. Claim Fifty-Three asserts in conclusory fashion that "Certain Rules of the Oklahoma Court of Criminal Appeals are unconstitutional both facially and as applied." Dkt. 1 at 25. Nothing in the Petition offers insight on which rules Mr. O'Rourke refers to or why any allegedly unconstitutional state procedural rules might help him show he is in custody in violation of federal law under the criminal judgment entered against him. Claim Fifty-Four is only slightly less cryptic. This claim contends "[t]here can be no waiver of a nonfrivolous claim where an appellant demands his direct and post-conviction attorneys include the claims but counsel refuses for various reasons." Dkt. 1 at 25. In a footnote, Mr. O'Rourke elaborates that this claim relates to the refusal of appellate counsel and postconviction counsel to raise claims Mr. O'Rourke "demanded" they raise. *Id.* at 25 n. 13. Mr. O'Rourke does not identify which claims he "demanded" either counsel raise in state court. Further, to the extent this claim could be understood, in part, as alleging postconviction counsel provided ineffective assistance, Mr. O'Rourke does not present a cognizable habeas claim. *See* 28 U.S.C. § 2254(i) (providing that "[t]he ineffectiveness or incompetence of counsel during . . . State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254"). Even if Mr. O'Rourke had not procedurally defaulted these claims, neither would support his request for federal habeas relief.

and Forty through Fifty-Four (Petitioner's Propositions II through VI and Claims V, AA through DD, part of EE, FF through RR, and 1 and 2) should be denied because Mr. O'Rourke procedurally defaulted them and has not shown that he can overcome the procedural default.

The Court further concludes that no issues raised in the Petition support granting a certificate of appealability. 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

IT IS ORDERED that the Petition for Writ of Habeas Corpus (Dkt. 1) is denied on all claims raised therein; a certificate of appealability is denied; and a separate judgment shall be entered in this matter.

DATED this 17th day of August 2026.

JOHN D. RUSSELL
*United States District Judge*